[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 12, 2007
THOMAS K. KAHN
CLERK

No. 06-12334
Non-Argument Calendar

_____

BIA No. A97-926-362

INGRIDA MOCKEVICIENE,
VESTA MOCKEVICIUTE,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(April 12, 2007)**

Before BIRCH, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Ingrida Mockeviciene and her daughter, Vesta Mockeviciute, seek review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") order denying their application for withholding of removal under the Immigration and Nationality Act ("INA"). Because the BIA's determination that Mockeviciene was not persecuted in Lithuania nor is more likely than not to suffer persecution if removed does not compel reversal, we deny the petition.

## I. Background

*a.    Application and Testimony*

Mockeviciene and her daughter, Vesta, both Lithuanian citizens, were admitted to the United States on April 20, 2000, as non-immigrant visitors and overstayed their visas. On January 20, 2004, Mockeviciene filed an application seeking asylum and withholding of removal, based on membership in a particular social group, and for relief under the CAT.[1]

In her application and at her hearing, Mockeviciene claimed that she was a lesbian and had suffered persecution because of her sexual orientation. Specifically, Mockeviciene testified that from 1994 until she left the country in

_____

[1] The IJ found, and the BIA affirmed, that Mockeviciene's asylum application was time-barred. This finding is not challenged on appeal, and is, therefore, abandoned. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). In addition, Mockeviciene makes no argument as to relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), and so it too is abandoned.

2

2000, the Lithuanian police searched her apartment without a warrant, had her terminated from her employment, improperly evicted her from her apartment, and twice detained her and beat her all on account of her sexual orientation. Mockeviciene's troubles with the police began in 1994 when she told her husband that she was a lesbian. According to her, her husband beat and raped her while his friends held her down. Mockeviciene reported the incident to the police. But instead of assisting her, she claims that the police searched her mother's apartment, where Mockeviciene was staying, presumably looking for "homosexual literature." The police did not detain Mockeviciene but told her that they would "keep an eye on [her]." The next year, Mockeviciene found a job at a cleaning company. She claims that the police informed her employer that she was a lesbian and caused her to be terminated.

In early 1997, Mockeviciene testified that a local police officer, Iankauskas, questioned her at her apartment about her sexual orientation. Officer Iankauskas expressed disgust at Mockeviciene's lesbianism, physically molested her, and threatened to make her life a "nightmare." Mockeviciene's neighbors became openly hostile, and she attributed this hostility to her husband and the police informing them all that she was a lesbian.

In September of 1997, Mockeviciene and her daughter went on a weekend trip and when they returned they found another family living in their apartment

with appropriate documents. The neighbors called the police who arrived and arrested Mockeviciene and detained her daughter as well. At the station, an officer explained that they had given away her apartment because they didn't want a lesbian living "in our district, our city or our country." Mockeviciene claims that the officer then kicked her. She was detained for two days and then moved to a nearby town. She continued to work at the same place she had before the eviction, but lost that job in May of 1998 after her employer discovered she was a lesbian.

In December of 1999, Mockeviciene received a notice to appear at the police station in the village she was living in. The new inspector, Pelvikes, informed her that he was aware of her "record" and that he did not intend to have a "debauchee" in his community. The next month, Mockeviciene received a letter asking if she wanted to join a gay-lesbian community and, if so, requesting that she send a picture to the return address. Mockeviciene did so and soon heard from a woman named "Donata," and they arranged to meet in March. At the appointed meeting time, Mockeviciene was arrested by Inspector Pelvikes and "abused verbally and physically" and threatened with three years' imprisonment. She did not provide any details regarding this abuse. Mockeviciene and her daughter left Lithuania to the United States, via the Netherlands, a month after this last encounter with the police.

4

Mockeviciene's daughter, Vesta, also testified at the hearing. She corroborated Mockeviciene's testimony regarding the two-day detention after the eviction as well as the hostile treatment from the neighbors. Vesta also testified that she knew her mother was a lesbian.

Mockeviciene submitted numerous documents in support of her asylum application, including both official reports regarding the status of gays and lesbians in Lithuania and personal letters from individuals who knew Mockeviciene in Lithuania. Friends of Mockeviciene wrote that they knew she was a lesbian and that she had been harmed by the police because of her orientation. The State Department's 2003 Country Report did not mention sexual orientation, but reports from the Council of Europe and the United Kingdom described the discrimination and violence that gays and lesbians face in Lithuania.

b.    *IJ Decision*

The IJ denied Mockeviciene's application for asylum, withholding of removal, and relief under CAT. The IJ found that Mockeviciene was not eligible for asylum because her application was untimely.[2] The IJ denied withholding of

---

[2] An alien may seek asylum if she "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." INA § 208(a)(2)(B); 8 U.S.C. § 1158(a)(2)(B). An untimely application may be considered, however, if the alien shows extraordinary circumstances for the delay in filing a timely application. INA § 208(a)(2)(D); 8 U.S.C. § 1158(a)(2)(D). No evidence of extraordinary circumstances was presented.

removal and protection under CAT because she had not met her burden to show past persecution on account of a protected status or a likelihood of future persecution if removed.

The IJ expressly found that Mockeviciene was not credible because, primarily, he did not believe she was actually a lesbian. The IJ provided the following reasons for his doubts regarding Mockeviciene's professed sexual orientation: (1) Mockeviciene "defined" being a lesbian as "a woman who wants to be around other women and . . . it does not necessarily involve[] sexual relationships"; (2) although she had been in the United States for four years, she had not had a lesbian partner, so that she was "[a]t best . . . a non-practicing lesbian"; (3) she had "no documents to establish that she is a lesbian," and the letters or notes she did submit were not originals and did not "mention with any degree of specificity the lesbian relationships of [Mockeviciene], only addressing the conclusion that [Mockeviciene] is indeed a lesbian"; (4) she had "not joined any groups while being here in the United States for four years that involve[d] lesbian activities"; (5) she did not produce any witnesses to "attest to the fact that she is indeed a lesbian"; (6) she provided no documentation of her problems with the police; and (7) although her mother was currently visiting her, her mother did not testify at the hearing. The IJ also based his adverse credibility determination on Mockeviciene's demeanor during testimony.

After finding Mockeviciene not credible, the IJ determined that, even assuming that Mockeviciene was a member of a protected social group based on her sexual orientation, she did not qualify for asylum because she failed to establish that she was persecuted because of her membership in a particular social group.[3] The IJ found that the incidents that Mockeviciene testified about did not constitute a threat to her life or freedom, and the incidents perpetrated by one police officer were insufficient to establish that, even if he did persecute her, that the persecution was caused by the government. Furthermore, the IJ found that the documents introduced into evidence indicating that (1) homosexuality had been decriminalized in Lithuania, and (2) the Lithuanian President accepted the credentials of the new Australian Ambassador who introduced his boyfriend to the President at the ceremony demonstrate that "homosexuality is at least somewhat tolerated in Lithuania." The IJ characterized Mockeviciene's testimony as amounting to, "at best . . . discrimination." The IJ also determined that Mockeviciene did not demonstrate the potential for future persecution or torture if she returned to Lithuania.

    *c.*    *BIA Decision*

---

[3] The IJ noted that if Mockeviciene does not qualify under the asylum standard, she cannot qualify under the more difficult standard for withholding of removal.

Mockeviciene, aided by counsel, filed a Notice of Appeal to the BIA claiming that the IJ erred in determining that Mockeviciene was not a lesbian and therefore ineligible for asylum based on her membership in a particular social group. She also challenged the IJ's credibility determination and claimed that the IJ demonstrated bias by his question of the daughter's sexual orientation.[4] Although Mockeviciene's attorney indicated that he intended to file a separate brief in support of the appeal, he did not do so. Instead, he filed a motion to remand in order to seek adjustment of status as the spouse of a lawful permanent resident based on Mockeviciene's recent marriage.

The BIA denied Mockeviciene's motion to remand and affirmed the IJ's decision to deny Mockeviciene's application. The BIA stated that Mockeviciene had not submitted an application for adjustment of status or any evidence that her husband had filed the appropriate visa petition. Furthermore, the BIA noted that an immigrant visa would not be immediately available to Mockeviciene. Because Mockeviciene did not establish her prima facie eligibility for adjustment of status, the BIA denied her motion to remand.

After briefly noting the IJ's conclusions in his decision, the BIA found that Mockeviciene's subsequent marriage to a man undercut the credibility of her claim to be a lesbian and thus the IJ's credibility determination was not clearly erroneous.

---

[4] The BIA found no evidence of bias, and this issue in not appealed.

The BIA accepted the IJ's "ultimate conclusion" that Mockeviciene did not establish her burden of proof for asylum and therefore could not qualify for withholding of removal or protection under the CAT.

This petition follows.

## II. Standard of Review

We review the BIA's legal conclusions de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814. 817 (11th Cir. 2004). We review the BIA's factual findings under the deferential substantial evidence test and will affirm its decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 817-18 (11th Cir. 2004) (quoting Al Najjar, 257 F.3d at 1283-84) (quotations omitted). "Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

## III. Discussion

Mockeviciene petitions us to reverse the BIA's determination that she was not persecuted on account of her status as a lesbian.[5] The IJ determined that Mockeviciene was ineligible for withholding of removal because she had not established that she was a lesbian or that she suffered persecution rather than discrimination. We examine each element of this determination in turn.

The BIA did not expressly adopt the IJ's findings regarding Mockeviciene's lack of credibility but rather found that the evidence of her recent marriage to a man supported the finding that the IJ's credibility determination was not clearly erroneous. Mockeviciene, in her reply, argues that the BIA erred in referencing material, i.e., the motion to remand for adjustment of status, that was not properly before the IJ. The BIA's scope of review is limited:

---

[5] The government argues that we do not have jurisdiction to hear petitioner's appeal because she did not exhaust her administrative remedies before the BIA. See 8 U.S.C. § 1252(d)(1); see also Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003) (holding that this court lacks jurisdiction to review a claim not raised in the appeal to the BIA) (quotation and citation omitted).

We review de novo whether we have subject matter jurisdiction. Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003). "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ."
8 U.S.C. § 1252(d)(1).

Mockeviciene's Notice of Appeal is brief but it specifically challenges the IJ's credibility determination and denial of asylum. Although Mockeviciene does not specifically mention withholding of removal, it is proper for us to treat an application for asylum to include an application for withholding of removal. We therefore have jurisdiction.

Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals. A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand. If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge or, as appropriate, to the Service.

8 C.F.R. § 1003.1(d)(3)(iv).

The question before us then is whether the BIA may take into account Mockeviciene's recent marriage when reviewing the IJ's credibility determination. It is undisputed that her marriage was not before the IJ. Although the BIA is not normally to engage in fact finding, this case falls into the "official documents" exception in the regulations governing the BIA. Id. Mockeviciene herself submitted the motion to remand for adjustment of status based on her recent marriage. It would be absurd to allow the BIA to consider evidence of the marriage in determining the motion and then bar the BIA's consideration of the very same evidence when evaluating the IJ's credibility determination.

Moreover, we are skeptical of the reasoning the IJ used to determine his adverse credibility finding. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) (holding that "the [BIA] must offer specific, cogent reasons for an adverse credibility finding."). The fact that Mockeviciene had not been in a recent relationship with a woman is not probative of her sexual orientation. The very

11

notion of a "non-practicing lesbian" seems to misunderstand the nature of sexual orientation, either homosexual or heterosexual.

Contrary to the IJ's findings, Mockeviciene did not define being a lesbian as "not necessarily involv[ing] sexual relationship," but, rather, when the IJ asked her what she thought being a lesbian meant, she responded that "[i]t doesn't have to be a sexual affair," and added that "[s]ex is necessary between two lesbians. I want to say that I want to have the sex with the woman. I cannot have it with a man." Additionally, the IJ's statement that no witnesses attested to the fact that she was a lesbian is incorrect, because her daughter testified that Mockeviciene was a lesbian. This testimony and the affidavits provided extrinsic evidence of Mockeviciene's claimed sexual orientation that the IJ was required to consider.

However, it is not our role to evaluate the record anew. We are limited to reviewing the BIA and IJ decisions and reversing only if the evidence compels us to do so. Mendoza, 327 F.3d at 1287. Given Mockeviciene's recent marriage, the evidence does not compel reversal of the BIA's credibility determination.

Even assuming that the record compels us to reverse the BIA's credibility determination, Mockeviciene is not eligible for withholding of removal because she did not meet her burden of proving past persecution or risk of future persecution. 8 C.F.R. § 208.16(b). Under our case law, persecution is "an extreme concept, requiring more than a few isolated instances of verbal harassment or

12

intimidation[.]" Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). The BIA has defined persecution to mean "a threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive." Matter of Acosta, 19 I&N Dec. 211, 222 (BIA 1985). However, the BIA also has stated that "persecution [does] not encompass all treatment that society regards as unfair, unjust, or even unlawful or unconstitutional." In re V-T-S, 21 I&N Dec. 792, 798 (BIA 1997).

Mockeviciene's description of the police's treatment of her does not rise to the level of persecution. Although she claims to have been detained twice, once for two days, the other time unstated, brief detention alone is not sufficient to constitute persecution. See Zheng v. U.S. Att'y Gen., 451 F.3d 1287 (11th Cir. 2006).

This court recently has held that individual incidents that would not, alone, constitute harm may rise to the level of persecution if considered cumulatively. Ruiz v. Gonzales, 2007 U.S. App. LEXIS 3699, at *11 (11th Cir. Feb. 20, 2007) (holding that the cumulative effect of the beatings, threatening phone calls, and a kidnaping amounts to persecution). Unlike Ruiz, however, Mockeviciene's detentions, alleged beating, and illegal eviction do not rise to the level of persecution because she presented no evidence that her life or freedom were ever in danger on account of her social group. Besides the past mistreatment, there is no

13

reason to think that Mockeviciene will face persecution if she returns to Lithuania either.

## IV. Conclusion

The record before us does not compel a finding of past persecution given the deferential standard of review and the standard of proof necessary to show past persecution. Accordingly, we **DENY** Mockeviciene's petition.